JAMES PATMOR v. R. G. ROMBAUER.

1. PETITION, *States a Cause of Action.* The petition in this case examined, and *held*, that it states a cause of action, and that the demurrer thereto was properly overruled.

2. EVIDENCE, *Supports Verdict.* The evidence examined, and *held* sufficient to support the verdict and findings of the jury.

3. CONTRACT—*Limitation of Action.* The record examined, and *held*, that, under the contract sued on, the action accrued in favor of Rombauer when he sold his stock in the Pittsburg Coal Company, and that the statute of limitations commenced to run at that time, and would run in three years, and had not, therefore, run at the commencement of this action.

*Error from Crawford District Court.*

THE opinion sufficiently states the case.

*Ed. Van Gundy*, for plaintiff in error.

*W. C. Perry*, for defendant in error.

Opinion by STRANG, C.: In May, 1883, the Pittsburg Coal Company was a corporation doing business in Crawford county, Kansas. At that time it was heavily in debt and very greatly embarrassed, so much so that it was likely to go into the hands of a receiver. The stock of the company consisted of 2,000 shares of $100 each, and was owned principally by C. Wood Davis, R. G. Rombauer, and James Patmor and wife. The holdings of Davis, Rombauer and Patmor (including that of his wife), were about equal. These parties were all anxious to sell out, as it had become manifest to them that they could not carry the business of the company along, and to sell out was the only means whereby they could save anything to themselves, and also get rid of a very heavy debt, amounting to nearly $60,000. Rombauer was the secretary and treasurer of the company, and the negotiation of a sale seems to have been left principally to him. He finally arranged to sell two-thirds of the stock to Col. E. H. Brown. Upon the basis of the liabilities of the company

being $53,000, Brown was to pay $24,000 for two-thirds of the stock. If the liabilities exceeded $53,000, such excess was to be deducted from the $24,000 to be paid by Brown. The liabilities were found to amount to about $59,000, and the sum paid by Brown was something like $20,000. Rombauer, plaintiff below, claims that Brown would not purchase the Davis and Patmor stock, unless he (Rombauer) would retain his stock and remain a member of the company and in charge of its business. He also claims that he reported the sale, with its condition, to Davis and Patmor, and told them he could not consent to the arrangement to hold his stock and remain in, unless he was protected, because he was afraid he would be frozen out and get nothing for his stock; and that Davis and Patmor then agreed that, if he would go ahead and close the sale on the terms and conditions reported, and let them have the proceeds of the present sale, that whenever he could sell his stock, if it did not bring as much as they were getting for theirs, they would make up to him the deficiency, so that he should receive one-third of what the whole stock sold for. Rombauer says he assented to that and closed the trade; that Davis and Patmor received something over $10,000 each for their stock; that he sold his stock as soon as he could, and for the best price he could get for it—$7,000; that thereupon Davis and Patmor each owed him $1,035 on said agreement. Patmor did not pay, and this suit was brought to recover that amount and accrued interest. The defendant below demurred to the petition in the case, which was overruled. He then answered by a general denial, and also pleaded the statute of limitations. A reply was filed, containing a general denial. The case was tried by the court and a jury January 12, 1888. The defendant below demurred to the evidence of the plaintiff, which was overruled. The jury returned a general verdict for the plaintiff below for $1,173.68, and also made the following special findings:

"The defendant asks the court to require the jury to answer the following questions, in case their general verdict is in favor of the plaintiff:

" 1. Did the plaintiff and the defendant enter into an agreement of the kind and character set out in the plaintiff's petition?   Ans.  Yes.

" 2. W̧as said agreement reduced to writing, or did it rest in parol?   A. In parol.

" 3. When and where was said agreement entered into? A. In May, 1883, at Pittsburg, Kansas.

" 4. Who was present when said agreement was entered into?   A. C. W. Davis.

" 5. Was the Pittsburg Coal Company in great difficulties financially?   A. Yes.

" 6. Was its stock of little practicable value?   A. Yes.

" 7. What was the value of the Pittsburg Coal Company's property on May 7, 1883?   A. From $75,000 to $85,000.

" 8. What was the total amount of the said Pittsburg Coal Company's indebtedness on May 7, 1883?   A. Between $55,000 and $60,000.

" 9. In what sum do you find the assets to exceed the liabilities of said coal company on May 7, 1883?   A. From $25,000 to $35,000.

" 10. What moved the plaintiff to remain in said coal company after May 7, 1883?   What was the cause of his doing so?   A. To protect his interest.

" 11. Was the contract between the plaintiff and defendant (if any was made) entered into prior to or after May 7, 1883? A. Prior.

" 12. On what day did the plaintiff sell to E. H. Brown the holding of the stock of Patmor and Davis?   A. On or about May 7, 1883.

" 13. When were Patmor and Davis to pay any sum of money on said contract?   A. No time set.

" 14. Was there any particular time when they or either of them was to pay said money or any part thereof?   A. Yes; when plaintiff sold his interest.

" 15. Was it or any part thereof to be paid within one year from the day on which the Patmor and Davis stock was sold to E. H. Brown?   [ Refused, and excepted to by the defendant.]

" 16. Was it to be paid at some remote and indefinite time? A. Yes.

" 17. At and after the time the Davis and Patmor stock was sold to Brown, did plaintiff hold the same position in the Pittsburg Coal Company that he had theretofore held?   A. Yes."

Motion for new trial was made, and overruled. Motion to set aside the special findings of the jury overruled.

The plaintiff in error contends here that the demurrer to the petition in the court below should have been sustained. He says the petition is defective in not stating that the stock was not, at any time prior to February 25, 1886, of any greater value than $7,000. Under the contract alleged and proved to the satisfaction of the jury, we do not think it was necessary to allege that the stock of Rombauer was not, at any time prior to his sale of the same to Brown, of a greater value than $7,000. As we understand the contract, and as the jury evidently understood it, Rombauer was to get out as soon as he could, and for the best price he could, exercising his own judgment in so doing. He was not bound to wait for a rise in the value of the stock, nor was he compelled to accept the first offer made him therefor if he thought he could do better. He was simply bound to act in good faith with Davis and Patmor in selling out, and there is no allegation of any fraud or want of good faith on his part. The evidence shows, however, that in point of fact he sold at the first and only opportunity he had to sell. That opportunity did not occur for eighteen months after the sale of the Davis and Patmor stock, and then he sold to Brown, the only person likely to want to buy. It is argued that, at the time Rombauer sold his stock to Brown, the stock was worth more than it was when the Davis and Patmor stock was sold, and that he accepted a less price for his than he got for theirs. It must be remembered, however, that in the meantime, during the interval between the sales of stock, the Pittsburg Coal Company had been reorganized, and became the Pittsburg & Midway Coal Company; and there is nothing in the evidence to show how Rombauer was protected, so far as his interest in the old company was concerned, when the reörganization took place. His stock may have been affected adversely by such reörganization, and been worth less than before. His interest may have been so affected that he thought the best thing he could do was to sell for what he could get.

It is said that the petition failed to state that Rombauer had complied with the terms of the contract himself. While the petition does not in so many words contain such an allegation, it yet shows that he had done what was required of him. He was to sell the stock of Davis and Patmor, retain his, and remain in the company for the time, and sell out as soon as he could, and the best he could. The petition alleges these things. We think the demurrer was properly overruled. The demurrer to the evidence was also properly overruled. The plaintiff had sustained his allegation in relation to the agreement by his own and Davis's evidence; had proved the sale of the Davis and Patmor stock and the amount realized therefor, and thus shown that under the agreement Patmor was indebted to him in the sum claimed.

Was the plaintiff below entitled to recover, under the evidence? For the purpose of arguing that he was not, counsel for plaintiff in error says the contract that Patmor is alleged to have made is nothing short of marvelous. We do not think there is anything marvelous or wonderful about the contract. It was not very definite in some of its provisions, and depended somewhat more than contracts usually do upon the honor of the contracting parties to be carried out in good faith. But the contracting parties were friends and partners in business, and evidently had a business confidence in each other; and when this is taken into consideration, together with the nature and character of the transaction and the situation of the parties at the time with respect to their business, the contract appears natural enough. But, if there was anything marvelous about it, it did not entirely grow out of Mr. Patmor's credulity. It is no more marvelous that he should have made such a contract with Rombauer than that Rombauer should have made such a contract with him. According to the evidence, Patmor got over $10,000 for what he expressed an emphatic willingness to sell for $4,000, if he could get out of the business. It follows, then, that if Rombauer had got nothing for his stock, and Davis and Patmor still performed the contract Rombauer says they made with

him, they would each realize some $2,000 more than the amount they were willing to sell for; so it was a winning deal for them in any event. But then the question is not whether the contract was a marvelous one or not, but was there a contract of the kind Rombauer avers was made between them? The jury have settled this question for all parties. They return a general verdict for the plaintiff, and support it with a special finding directly in point. The first question asked, and answered by the jury, reads as follows: "Did the plaintiff and defendant enter into an agreement of the kind and character set out in the plaintiff's petition?" To which question the jury say "Yes." The jury also settled another question that is discussed by counsel for plaintiff in error. They say, in answer to the 11th question, that the agreement entered into between plaintiff and defendant, set out in the petition in the lower court, was made prior to May 7, 1883, and therefore prior to the sale by Rombauer of the stock of Davis and Patmor to Brown, for in answer to the 12th finding they say the sale to Brown was on the 7th of May, 1883. We think, under the whole evidence, the sale to Brown and the agreement between plaintiff and defendant were practically contemporaneous. We think the court below was right in its instructions touching the question of the statute of limitations. The statute commenced to run from the time when the cause of action accrued in favor of Rombauer, which was upon the sale of his stock to Brown, and would run in three years. It had not run at the commencement of this suit. We have read the instructions through, and, taken as a whole, we think they are fair and good law. It is true there is a good deal of them, but then it is better to have some law to spare than to have too little, if the surplus is innocent of harm, as we think it was in this case.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.